IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOHN PAIZ,

      Plaintiff,

v.                                                                                          CIV 04-1098 KBM

JO ANNE B. BARNHART,
Commissioner of Social Security,

      Defendant.

# **MEMORANDUM OPINION AND ORDER**

     Plaintiff John Paiz has a tenth grade education and last worked as a mechanic for the City of Gallup, where he was employed for ten years. He quit working in 1989 at age thirty-five because of back and hip pain and difficulty bending. Plaintiff has not worked since. *E.g., Administrative Record* ("*Record*") at 12, 61-62, 67, 70, 253. Paiz also suffers from a number of chronic ailments, and he was exposed to chlorine gas just before he stopped working. Those conditions are not directly the subject of this disability claim, however. Rather, in his July 2002 application for Supplemental Security income benefits,[1] Plaintiff asserts that his back condition rendered him disabled as of August 1990. *E.g., id.* at 14-15, 42, 113-15.

     Administrative Law Judge ("ALJ") William F. Nail, Jr., found that Plaintiff has the residual functional capacity to perform a full range of light work,[2] and he denied benefits based on

---

   [1] At some point, Plaintiff filed another claim for disability benefits, but the status of the application is unknown. *See id.* at 56.

   [2] ALJ Nail used July 12, 2002 as the alleged onset date, possibly due to the prior application, but the reason he did so is unclear. *See Record* at 12. The onset date is not at issue here, however.

Medical-Vocational Rule 202.18 or the "Grids." *Id.* at 16.  The Appeals Council declined review on August 4, 2004, thereby rendering the ALJ's decision final.  *Id.* at 4.  Thereafter, a new attorney began representing Plaintiff, and he filed the instant action.  *See Doc. 9* at 3 n.3.

This matter is before the Court on Plaintiff's motion requesting reversal or remand, where he asserts that ALJ Nail erred by: (1) not ordering a consultative psychological examination, and (2) relying on the Grids when the nonexertional impairments of pain and depression were present.  *See Docs. 9, 10.*  Pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73(b), the parties have consented to have me serve as the presiding judge and enter final judgment.  *See Docs. 3, 5.*  The entire record has been read and carefully considered.  I find that Plaintiff's motion should be denied and the decision of the Commissioner affirmed.

## I.  Factual Background Regarding Depression

Neither Plaintiff nor his attorney at the administrative level asserted depression as a disabling condition, or that depression affected his functioning in any way.  *See Record* at 38, 42-45, 61, 78-80, 86-99, 103-04.  Likewise, Plaintiff's mother did not mention depression as a disabling or limiting condition either.  *Id.* at 100-102.  She simply said that Plaintiff "feels helpless because he can't work."  *Id.* at 102.

In fact, the only reason depression was even considered a possible impairment was because the Administration raised it on its own.  It did so based on medical records it received just prior to its decision on reconsideration.  *See id.* at 109-15, 196, 199-205.  Yet these three scant records which mention a mental condition wholly fail to reveal any depression of long-standing duration or severity, or any limitations as a result of the condition.

For example, one of the records documents a visit to a mental health clinic in connection

with his first application for benefits.  At that April 2001 visit, Plaintiff said he had been "referred" to the clinic "by the Social Security hearing officer, '[b]ecause I can't breathe' . . . ha[ve] dizzy spells, headaches, claustrophobia . . . can't handle loud noise [and] ha[ve] panic symptoms."  *Id.* at 113.  This was the first time that he ever had any "psychiatric treatment."  *Id.*

The therapist who saw Plaintiff on that occasion did not diagnose him.  Her notes state that Plaintiff "seems tenuously connected to systems that could help him . . . no desire to follow up with psychotherapy or psychiatry" and that his "anxiety seems to express itself in a restlessness which makes it difficult for him to follow through with treatment options."  *Id.* at 115.  As ALJ Nail mentioned, Plaintiff testified about this session.  "[I] had to go see . . . a shrink . . . .  And I – I'm all right.  According to her, I'm all right. . . . mentally I'm okay, but I haven't heard nothing else from them . . . ."  *Id.* at 269.  The "treatment plan" dated the following week shows a diagnosis of "PTSD w/panic symptoms," but that Plaintiff was "discharged" because he was "unwilling to continue [treatment.]"  *Id.* at 111-12; *see also id.* at 15.

The only other two records that make any mention of a mental condition are from Plaintiff's primary care physician, Dr. Rodolfo Martinez-Ferrate, who began seeing Plaintiff in March 2002 to treat his chronic ailments.  *E.g., id.* at 196-204, 255.  Just before Plaintiff filed the instant application for benefits, he saw Dr. Ferrate and the notes from that visit do not indicate any problem with depression or anxiety.  *See id.* at 201-04.  Just after filing the application, Paiz told Dr. Ferrate that since he had been advised to see a cardiologist, "he is now having a lot of stress in relationship to his heart and he fears that [he] may have some underlying heart problem."  *Id.* at 138.  Dr. Ferrate included "[g]eneralized anxiety disorder" among Plaintiff's other problems, *id.* at 199, and evidently scheduled a cardiac stress test to address the anxiety situation.

3

He did not prescribe any medication or therapy at that time.

After his claim was initially denied, Plaintiff saw Dr. Ferrate again in January 2003. *Id.* at 196. His notes indicate that Plaintiff said he was having "a lot of pain" and "still having a lot of problems with his back" and that he may need to have back surgery "of which he is very afraid." *Id*. "Patient is concerned because he is feeling depressed, frustrated, angry. He feels like he needs to cry most of the time. He is overwhelmed by all these problems. ***Overall he has been well***." *Id.* (emphasis added).

Dr. Ferrate also assessed "[m]ajor depressive disorder with gentle anxiety" on that date based on Plaintiff's "Goldberg depression scale [score of] 33, which is positive for ***mild to moderate*** depression and certainly above possible or borderline level. Patient looks depressed. He looks mostly anxious." *Id.* (emphasis added). Dr. Ferrate prescribed "Lexapro[3] . . . every day for no less than 8 weeks with Goldberg depression scale at the end of that week and done today." *Id.* at 197.

Because of Dr. Ferrate's diagnosis, the Administration referred the matter to Dr. LeRoy

---

[3]   GENERIC NAME: escitalopram

BRAND NAME: Lexapro

DRUG CLASS AND MECHANISM: Escitalopram is an oral drug that is used for treating depression and generalized anxiety disorder. It works by affecting neurotransmitters in the brain, the chemical messengers that nerves use to communicate with one another. Neurotransmitters are made and released by nerves and then travel to other nearby nerves where they attach to receptors on the nerves. Some neurotransmitters that are released do not bind to receptors and are taken up by the nerves that produced them. This is referred to as "reuptake."

*www.medicinenet.com/escitalopram/article.htm*

Gabaldon[4] for his review and for a Psychiatric Review Technique ("PRT") form. *See id.* at 196-97, 206-18, 224. Dr. Gabaldon found that Plaintiff's anxiety and depression resulted only in mild or no functional limitations. He specifically noted that Plaintiff is "able to clean, cook and sleep independently; he is social." *Id.* at 218; *see also id.* at 209, 210, 216.

## II.  Analysis

If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and Plaintiff is not entitled to relief. *E.g., Langley v. Barnhart,* 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart,* 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart,* 331 F.3d 758, 760 (10th Cir. 2003).[5] My assessment is based on a "meticulous" review of the entire record, where I can neither reweigh the evidence nor substitute my judgment for that of the agency. *Hamlin,* 365 F.3d at 1214; *see also Langley,* 373 F.3d at 1118.

### A.  *Need For Consultative Psychiatric Examination Is Not Clearly Established By Record*

Plaintiff asserts that the record is devoid of any "evidence regarding the claimant's mental functional restrictions." *Doc. 10* at 5. He further contends that in light of this state of the record, ALJ Nail created "the type of 'conflict' that required a consultative examination" when he found

---

[4] Dr. Gabaldon's credentials are not in the record. In other opinions I have noted that he is a psychologist. *See Villa v. Barnhart, CIV 04-740 KBM (Doc. 16 at 9); Avila v. Barnhart,* CIV 04-562 KBM (*Doc. 15* at 3); *Hardesty v. Barnhart,* CIV 03-1114 (*Doc. 15* at 6); *Gardom v. Barnhart,* CIV 03-699 KBM (*Doc. 16* at 7); *Chemereteff v. Barnhart,* CIV 01-1293 KBM (*Doc. 16* at 9).

[5] "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley,* 373 F.3d at 1118 (internal quotations and citations omitted); *see also Hamlin,* 365 F.3d at 1214; *Doyal,* 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record of if there is a mere scintilla of evidence supporting it." *Langley,* 373 F.3d at 1118 (internal quotations and citations omitted); *see also Hamlin,* 365 F.3d at 1214.

Plaintiff's depression "severe" at Step 2, not discussing it at Step 3, and finding it "not severe" at Step 4. *Id.* at 7 (emphasis omitted); *see also Doc. 14* at 1-3.

I agree that ALJ Nail's discussion of depression could be interpreted as confusing. At Step 2, he states that "[t]he medical evidence indicates that claimant has back pain secondary to spinal stenosis, depression and hepatitis C, impairments that are "severe" within the meaning of the Regulations. *Record* at 14. Yet his Step 4 finding ends with the following statement:

> ***The state agency psychiatrist concluded that the claimant's mental problems are not severe*** (Exhibit 9F). ***I find no reason to dispute these conclusions*** given that the objective medical findings are minimal and based on my review of the record as a whole.

*Record* at 15 (emphasis added). Perhaps ALJ Nail neglected to discuss depression at Step 3 because he intended to find depression not severe at Step 2, and did not catch the discrepancy in the draft of the opinion he filed. In that event, he would have to discuss depression anyway at Step 4. *See Social Security Ruling 96-8p,* 1996 WL 374184, at *5 (July 2, 1996) (in assessing residual functional capacity, ALJ must consider limitations and restrictions imposed by all impairments, even nonsevere impairments). Nevertheless, I disagree that the way the opinion is written is sufficient to warrant remand under the circumstances presented by this case.[6]

"[T]he claimant has the burden to make sure there is, in the record, evidence sufficient to

---

[6] *C.f., Valdez v. Barnhart,* CIV 03-1006 KBM (*Doc. 15* at 10: "While the ALJ's opinion arguably could have been written with more detail and discussion, a deficiency in opinion writing is not grounds for remand. *See e.g, Senne v. Apfel,* 198 F.3d 1065, 1067 (8th Cir. 1999) ('We have consistently held that a deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case.'); *Mays v. Bowen,* 837 F.2d 1362, 1364 (5th Cir. 1988) (same)). Notably, other than again challenging the ALJ's credibility finding, Plaintiff cites no medical evidence in the record that supports her argument."); *Dominguez v. Barnhart,* CIV 02-931 KBM (*Doc. 17* at 14-15: "I consider the ALJ's failure to discuss the letter a mere deficiency in opinion writing and determine that a remand for that purpose alone would be an empty exercise." citing *Senne* and *Mays*).

suggest a reasonable possibility that a *severe* impairment exists." *Hawkins v. Chater,* 113 F.3d 1162, 1167 (10th Cir. 1997) (emphasis added).  Neither Plaintiff nor his attorney raised the issue of depression as disabling.  Dr. Ferrate's diagnosis of depression says nothing about limitations.  In my view, Plaintiff presented the Administration with nothing more than "the mere presence of a condition."  *Hinkle v. Apfel,* 132 F.3d 1349, 1352 (10th Cir. 1997).

Even assuming Plaintiff met his burden, an ALJ is not necessarily required to order a consultative examination.  If Plaintiff had proceeded *pro se* at the administrative level, a consultative examination was required only if "such an examination is necessary or helpful to resolve the issue of impairment."  *Id.*  This would be a difficult conclusion to make when Plaintiff asserts no impairments based on his depression and the Administration's reviewer determines that any impairments would be mild at best.

Where, as here, a claimant is represented by an attorney during the administrative proceedings, but the attorney does not request a consultative examination or indicate that the issue of depression needed further development, the Court "will not impose a duty on the ALJ to order a consultative examination unless the need for one is *clearly* established." *Hawkins v. Chater,* 113 F.3d 1162, 1168 (10th Cir. 1997) (emphasis added); *see also id.* at 1167.  The record before me does not establish a "clear" need for a consultative examination.

There is no indication that in the two years between Plaintiff's one and only visit to a mental health professional and Dr. Ferrate's diagnosis, depression had any impact on Plaintiff's abilities.  Likewise, as to during the sixteen months between Dr. Ferrate's diagnosis and ALJ Nail's decision, the medical records are silent as to whether Plaintiff:  took the Lexapro at all; took it for the interval prescribed with success; was required to continue the medication; was

referred to a psychiatrist; attended therapy; experienced a brief and situational episode related to possible back surgery; or experienced any functional limitations due to depression. Furthermore, none of Plaintiff's pleadings in this appeal with his new attorney mention any limitations Paiz suffers as a result of depression.

In summary, (1) the claimant did not raise a mental condition as disabling, (2) his attorney at the administrative level did not request a consultative examination or otherwise raise the issue of further development of the record, (3) the record does not show that depression is severe, resulted in functional limitations, or required further treatment, and (4) there is no suggestion by the attorney in the appeal what a consultative examination would disclose. Different combinations of these factors have led the Tenth Circuit after *Hawkins* to conclude that an ALJ's failure to *sua sponte* order a psychiatric consultive examination is not error. I reach the same result on the facts before me.[7]

---

[7] The Tenth Circuit decisions are unpublished and include, for example, *Eacret v. Barnhart,* 120 Fed. Appx. 264, 267-69 ) (10th Cir. 2005); *Sneed v. Barnhart,* 88 Fed. Appx. 297, 300-01 (10th Cir. 2004); *Davis v. Barnhart,* 85 Fed. Appx. 170, 173 (10th Cir. 2004); *Fields v. Barnhart,* 83 Fed. Appx. 993, 996 (10th Cir. 2003) (Step 2 case); *Cherry v. Apfel,* 1999 WL 1244464 at **2-3 (10th Cir. 1999); *Fromme v. Apfel,* 1999 WL 394616 at *2 (10th Cir. 1999); *Duncan v. Apfel,* 1999 WL 288387 at **4-5 (10th Cir. 1999); *Toombs v. Apfel,* 1998 WL 717295 at **2-3 (10th Cir. 1998); *VanSickle v. Callahan,* 1997 WL 57918 at *1 (10th Cir. 1997); *Brewer v. Chater,* 1997 WL 338600 at ** 2-3 (10th Cir. 1997); *Ferguson v. Chater,* 1996 WL 165307 at *2 (10th Cir. 1996).

Tenth Circuit decisions finding breach of the duty to develop the record with a psychiatric consultative evaluation are factually distinguishable, *see Jackson v. Barnhart,* 60 Fed. Appx. 225 258-60 (10th Cir. 2003); Smith v. Apfel, 1998 WL 747121 at **1-2 (10th Cir. 1998), as are those decisions cited by Plaintiff. In the *Moraga* decision attached to Document 14, I noted that Plaintiff's attorney was "diligent" in seeking a consultative psychiatric examination but that the medical record before the ALJ did not warrant the examination. In *Moraga* it was the additional evidence presented at the Appeals Council level that changed the posture of the case. Here the appeals counsel submissions do not mention depression. *See Record* at 3A, 245. In the *Pasilla* decision attached to Document 14, a belated "consultative examination" was conducted and showed severe limitations that might establish a Listings-level impairment. The Kansas decision cited in Document 10 is not attached nor available on Westlaw, but it is available to the judiciary from the court's Intranet site. That decision reversed a bare bones discussion

### *B. Reliance On The "Grids" Was Not Error*

It is well-settled that "[t]he mere presence of a nonexertional impairment does not preclude reliance on the grids." *Thompson v. Sullivan,* 987 F.2d 1482, 1488 (10th Cir. 1993). An ALJ may not rely conclusively on the Grids if a claimant has nonexertional impairments that limit the ability to do a full range of work. *E.g., id.; see also Evans v. Chater,* 55 F.3d 530, 532 (10th Cir. 1995). Conversely, an ALJ can properly rely on the Grids if an impairment, including mental impairments, do not limit a claimant's ability to work. *E.g., Castellano v. Secretary of Health & Human Servs.,* 26 F.3d 1027, 1030 (10th Cir. 1994); *Eggleston v. Bowen,* 851 F.2d 1244, 1247 (10th Cir. 1988).

Furthermore, a claimant's "inability to work pain-free, standing alone, is not a sufficient reason to find [him] disabled." *Qantu v. Barnhart,* 72 Fed. Appx. 807, 811 (10th Cir. 2003) (citing *Gossett v. Bowen,* 862 F.2d 802, 807 (10th Cir. 1988)). "Subjective testimony that the claimant suffers pain by itself cannot establish a finding of disability. . . . By statute, objective medical evidence must establish an impairment that reasonably could be expected to produce the alleged pain, and statements regarding the intensity and persistence of the pain must be consistent

---

denying benefits on several grounds, notably the ALJ's failure to discuss a treating physician opinion. The court did not discuss the evidence in detail but had other grounds to remand when it stated:

> "The court is also concerned that while the ALJ found that plaintiff suffered from depression, he did not order a consultative examination to develop the scanty record on this subject. *See Hawkins v. Chater,* 113 F.3d 1162, 1165 (10th Cir. 1997). Moreover, the reliance upon the findings of Dr. Bolte, a nontreating physician who had limited contact with plaintiff, is a questionable basis for developing a conclusion regarding plaintiff's residual functional capacity. *See Frey v. Bowen,* 816 F.2d 508, 515 (10th Cir. 1987).

www.ksd.circ10.dcn/opinions/034134-16.html.

with the medical findings and signs." *Gossett,* 862 F.2d at 806.

Plaintiff argues that because ALJ Nail found Plaintiff to have the "severe" conditions of "pain secondary to spinal stenosis and depression," he could not rely on the Grids to find Plaintiff disabled. *Doc. 10* at 8 (internal quotations omitted). Stated differently, Plaintiff contends that by finding these conditions "severe" at Step 2, ALJ Nail "implicitly" found that these conditions are "significant nonexertional impairments" thereby requiring him to call a vocational expert. *See id.* at 9. However, as I have explained before, a Step 2 finding of "severity" does not automatically require a finding of limitation at Step 4 or Step 5. *See Herrera v. Barnhart,* CIV 02-24 KBM (*Doc. 21* at 11-13); *c.f., Thompson,* 987 F.2d at 1488-91.

When reading the ALJ's opinion as a whole, it is clear that ALJ Nail found Plaintiff's depression not severe, resulting in no limitations, and that Plaintiff could perform a full range of light work despite his allegations of pain, and Plaintiff alleges no limitations due to his diagnosis of depression. Significantly, Plaintiff does not challenge ALJ Nail's finding that "the claimant's allegations regarding his limitations [due to pain] are not totally credible." *Record* at 16, *see also id.* at 14-15. Nor does he challenge the finding, based on the state agency source conclusion, that Plaintiff retains the physical "capacity to perform the requirements of light work." *Id.* at 15. Therefore, the ALJ's reliance on the Grids cannot be deemed erroneous.

Wherefore,

**IT IS HEREBY ORDERED** that Plaintiff's motion *(Doc. 9)* is DENIED, and the decision of the Commissioner is affirmed. A final order will enter concurrently herewith.

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by consent.